636 So.2d 552 (1994)
STATE of Florida, Appellant,
v.
Ronald HUTCHINS, Appellee.
No. 93-01659.
District Court of Appeal of Florida, Second District.
May 6, 1994.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellant.
James Marion Moorman, Public Defender, and Megan Olson, Asst. Public Defender, Bartow, for appellee.
PATTERSON, Judge.
The state challenges the trial court's order granting the motion to suppress illegal drugs. The drugs were found in Ronald Hutchins' possession when he was taken into protective custody under the Myers Act, section 396.072, Florida Statutes (1991). The state argues that the search was legal since it was conducted in a medical emergency and was not intended to be a search for contraband. We agree and reverse.
On March 8, 1992, Officer Dubet of the St. Petersburg Police Department was on patrol when he was flagged down by a woman on a street corner. The woman told Dubet that Hutchins, who was standing next to her holding on to a pole, had hit her. Dubet observed a cut on her lower lip and at that point he believed he had probable cause to arrest Hutchins for domestic battery. As Dubet spoke to the woman, he had Hutchins stand on the corner. Hutchins emitted a strong odor of alcohol and was not able to stand up straight. He was wobbling from side to side and almost fell onto the street. Dubet felt Hutchins was in such danger of falling into traffic that Dubet moved him from the curb.
*553 Dubet tried to talk with Hutchins, but he was not communicative. The woman told Dubet that Hutchins had been drinking a lot and that he had taken four or five pills. She did not know what the pills were. Dubet called fire rescue to the scene. Since Hutchins was not in control of his faculties and Dubet was concerned for his welfare, Dubet took Hutchins into protective custody pursuant to the Myers Act, section 396.072, Florida Statutes (1991). Once Hutchins was in the ambulance, either Dubet or one of the fire rescue technicians asked him what pills he had taken. Hutchins stated that the drugs were in his pocket. Dubet removed a pill bottle containing Xanax from Hutchins' pocket. Once Dubet discovered that the pills were contraband, he arrested Hutchins for possession of illegal drugs.
The state filed an information charging Hutchins with possession of Alprazolam, the chemical name for Xanax. Hutchins then moved to suppress the pills. Following an evidentiary hearing, the trial court granted the motion to suppress. The trial court's written order found that Hutchins had been detained because he was incapacitated and in need of emergency care. It found that the detention was not an arrest and since "[t]here was no warrant for the arrest or search of the Defendant, he was incapable of consenting to the search, and there was no probable cause for the officer to conduct a pat-down search to ensure the officer's personal safety."
Although no Florida cases exist which are directly on point, in Gilbert v. State, 289 So.2d 475 (Fla. 1st DCA), cert. denied, 294 So.2d 660 (Fla. 1974), an analogous situation, the court upheld the search of an intoxicated woman's jacket which revealed illegal drugs. The police had found the woman staggering in the middle of a street and took her to the police station to investigate her allegations that she had been assaulted. While she was there, she became increasingly disoriented and despondent and threatened suicide. Fearing that she might injure herself, the officers searched her jacket for possible harmful instruments or substances. The court found that the search was reasonable under the circumstances, and the fact that illegal drugs were found did not render the search illegal.
In United States v. Borchartd, 809 F.2d 1115 (5th Cir.1987), the defendant was near death due to a heroin overdose. When a nurse administered an anti-narcotic drug to the defendant, he vomited nine full bags and two burst bags of heroin. In upholding the defendant's conviction for possession of heroin, the Fifth Circuit held that "[t]he fourth amendment does not bar warrantless intrusions where government officials reasonably believe the intrusion is necessary to deal with a life-threatening emergency." 809 F.2d at 1117. The court further found that evidence inadvertently discovered as a result of a good faith search of an injured or incapacitated person is admissible in criminal proceedings. See also W. LaFave, Search & Seizure, § 5.4(c) at 525 (2d ed. 1987).
We adopt the reasoning in Gilbert and Borchartd and hold that the search of Hutchins' pocket was reasonable. Officer Dubet found the illegal drugs during the search, which he believed in good faith to be reasonably necessary to assist the appellee in a potentially life-threatening situation. Therefore, the evidence was admissible and the trial court erred in granting Hutchins' motion to suppress.
Hutchins argues that the state waived this argument by failing to raise it in the trial court; however, once this court has jurisdiction, it has the discretion to consider any issue affecting the case. See Cantor v. Davis, 489 So.2d 18 (Fla. 1986).
As an additional ground for reversal, the record shows that the officer had probable cause to arrest Hutchins for domestic battery and search him incident to the arrest. Once probable cause exists, it is immaterial whether the search precedes the arrest or vice versa. Dixon v. State, 343 So.2d 1345 (Fla. 2d DCA 1977). Therefore, the trial court erred in granting the motion to suppress on this ground as well.
Reversed and remanded.
*554 HALL, A.C.J., concurs.
ALTENBERND, J., concurs in part and dissents in part.
ALTENBERND, Judge, concurring in part and dissenting in part.
Section 396.072(7), Florida Statutes (1991), provides: "A taking into protective custody under this section shall not be considered an arrest for any purpose, and no entry or other record shall be made to indicate that [an intoxicated person] has been arrested or has been charged with a crime."[1] I am inclined to believe that this statute would better achieve its goals if it expressly created a statutory exclusionary rule for evidence of addiction found during a police search of an incapacitated person who is subject to civil protective custody. Nevertheless, I agree that the search in this case does not violate the Fourth Amendment.
The admissibility of evidence seized during a search incident to civil protective custody is not an easy issue. I agree that from a Fourth Amendment perspective a person who becomes incapacitated in public has no reasonable expectation that the police will not conduct a search to determine identity and to locate a drug that could be a life-threatening agent. Indeed, most citizens would think the police derelict in their duties if they did not conduct such a search.
On the other hand, such a search is not done as a tool of police investigation. The small vial of drugs in this case was not discovered during a protective patdown. The officer had to reach into Mr. Hutchins' pants pocket and remove an object that clearly was not a weapon. Such evidence is typically discovered while an officer is trying to "help" the incapacitated person and his or her family. The officer discovers the illegal contraband while rendering first aid. There is one Florida decision suppressing similar evidence when the defendant was not in need of emergency care. Bennett v. State, 344 So.2d 315 (Fla. 1st DCA 1977). At least one state has decided that privacy rights during protective custody restrict the admissibility of similar evidence. People v. Dandrea, 736 P.2d 1211 (Colo. 1987); People v. Chaves, 855 P.2d 852 (Colo. 1993).
Through the Myers Act, this state decriminalized public intoxication to facilitate treatment for addictions. See ch. 71-132, § 2, Laws of Fla. By permitting the introduction of evidence of addiction found during civil protective detentions, we will discourage citizens from requesting help from the police for addicted friends and family members. I question whether the legislature intends to discourage use of the Myers Act in this manner. However, if the legislature wishes to create a narrow rule to suppress evidence of addiction found during protective custody, as compared to evidence of trafficking or other crimes, it will need to add that language to chapter 397.
I do not agree that the officer had probable cause to arrest Mr. Hutchins for domestic battery. The record reflects that the officer arrived after an incident between two people on a street corner in a business section of St. Petersburg. The woman said that the man had hit her, and she had a cut lip. The officer made no effort to determine whether these people were husband and wife or otherwise shared a "domestic" relationship. See § 741.30(1)(a), Fla. Stat. (1991). I do not believe that a mere difference in gender is a reasonable basis to conclude that a battery occurring on a public street is a domestic battery, as compared to simple battery. An officer, of course, has no basis to arrest a person without a warrant for a simple battery occurring outside the officer's presence.
NOTES
[1] This statute was repealed in 1992, but similar language now exists in section 397.6772, Florida Statutes (1993).