724 So.2d 577 (1998)
STRAUB CAPITAL CORPORATION, as General Partner of Palm Beach Park Centre, Ltd., George E. Straub and Glenn E. Straub, Appellants,
v.
L. FRANK CHOPIN, P.A., Jacqueline S. Miller, P.A., and Joel H. Yudenfreund, P.A., as General Partners of Chopin, Miller & Yudenfreund, Appellees.
Nos. 97-0353, 97-1578.
District Court of Appeal of Florida, Fourth District.
October 1, 1998.
Opinion Amending Decision on Rehearing January 27, 1999.
*578 Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, for Appellants.
Robert M. Montgomery, Jr., of Montgomery & Larmoyeux, and Russell S. Bohn of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for Appellees.
POLEN, Judge.
In these consolidated appeals, the landlord, Straub Capital Corp. (SCC), appeals a final judgment awarding the law firms/tenants lost profits in the amount of $158,619.00 on the tenants' claim of negligent misrepresentation, the only claim at issue in this appeal. SCC also appeals the post-judgment award of attorney's fees in the amount of $36,275, which the tenants cross-appeal. We reverse both awards.
This lease dispute case proceeded to trial on the tenants' five count complaint which alleged causes of action for, among others, fraud in the inducement and negligent misrepresentation. The tenants included L. Frank Chopin, P.A., Jacqueline S. Miller, P.A., and Joel H. Yudenfreund, P.A., all former attorneys with Cadwalader, Wickersham, & Taft who left that firm around the time it closed its Palm Beach office and joined together in a new professional association: Chopin, Miller & Yudenfreund. Wishing to remain in the building previously housing Cadwalader, the new firm executed a nearly fifty page lease with SCC in November of 1994.
The circumstances leading up to this dispute involved several tenants in SCC's building (Palm Beach Park Centre) who were scheduled to either vacate or exchange certain offices in the building at 1994s year end. Cadwalader would be vacating its space on the third floor, Paine Webber would be moving from its space on the second floor up to the Cadwalader space on the third floor, and Chopin, Miller, and Yudenfreund would be moving into PaineWebber's previous space on the second floor. As the circumstances evolved, PaineWebber's space was not available for Chopin, Miller, and Yudenfreund until sometime at the end of January or beginning of February of 1995. Renovations to the new Chopin, Miller, and Yudenfreund office continued in "phases" until April of 1995. Shortly after the firm moved into its space in February, these tenants filed their complaint against the landlord.
Chopin testified the parties negotiated their lease "word by word, line by line the entire lease." He testified under no circumstances would he have entered into the lease agreement without the promise by George Straub on the part of SCC that the tenants' office would be ready by January of 1995. The lease itself, however, contains a miscellaneous provision that all negotiations were incorporated into the agreement and there were no covenants or representations other than those specifically contained in the lease. The lease does not contain an express occupancy date, however it does contain an express provision that "time is of the essence of this agreement...."
The trial court found SCC liable for negligent misrepresentation based on SCC's assurance the leased premises would be available as a finished project by January 1, 1995. It rejected as incredible the landlord's contention that all parties were aware the project *579 would be completed in "phases." It found the landlord negligently promised more than it could perform to the detriment of the tenants, further finding that due to the business interruption from January to April of 1995, the tenants sustained a loss of profits in the amount of $158,619.00. The trial court denied the tenants' claim for fraud in the inducement, finding the landlord did not intend at the outset to fail to complete the leased premises by January 1, 1995. The court later awarded attorney's fees based on a prevailing party clause in the parties' lease.
We hold the economic loss rule bars the tenants' claim for negligent misrepresentation because, absent a tort independent of breach of contract, the remedy for economic loss lies in contract law. HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla.1996) (noting AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So.2d 180 (Fla.1987), where the court held absent some conduct resulting in personal injury or property damage, there can be no independent tort flowing from a contractual breach which would justify a tort claim solely for economic losses). HTP recognized the economic loss rule has not eliminated causes of action based on torts independent of a contractual breach even though there exists a breach of contract action. Id. at 1239. The court in HTP recognized that "[w]here a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract." Id. It stated fraudulent inducement is such an independent tort because it requires proof of facts separate and distinct from the breach of the contract. Id. A cause of action on a contract, and for fraud in inducing the plaintiff to enter into the contract, may exist at the same time, and recovery on one cause will not bar a subsequent action on the other. Id.
However, a party may not avoid the economic loss rule by entitling a claim a "fraudulent inducement" claim. Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So.2d 74, 78 (Fla. 3d DCA), rev. denied, 700 So.2d 685 (Fla.1997). In Hotels of Key Largo, the Third District concluded:
Misrepresentations relating to the breaching party's performance of a contract do not give rise to an independent cause of action in tort, because such misrepresentations are interwoven and indistinct from the heart of the contractual agreement. Therefore, we clarify that where the alleged fraudulent misrepresentation is inseparable from the essence of the parties' agreement, the economic loss rule applies and the parties are limited to pursuing their rights in contract.
Id. at 78.
We cited Hotels with approval recently in Greenfield v. Manor Care, Inc., 705 So.2d 926 (Fla. 4th DCA 1997) where we stated: "When the misrepresentations are related to the breaching party's performance of the contract, they do not give rise to an independent cause of action in tort." Id. at 932. In Greenfield we concluded a breach of fiduciary duty claim was not barred by the economic loss rule because the plaintiff alleged a fiduciary duty between the nursing home and its residents, which arose out of a special relationship independent of the parties' contract. Id.
Based on our review of this case law we conclude the tenants' action for negligent misrepresentation in the instant case was barred by the economic loss rule because the subject misrepresentations were directly related to the breaching party's performance under the subject lease agreement. This is not a case where fraudulent inducement was established by the evidence. To the contrary, the trial court expressly denied the tenants' fraudulent inducement claim on the basis no evidence supported a finding the landlord intended at the outset to fail to complete the leased premises by January 1, 1995.
Our reversal of that portion of the final judgment awarding damages for negligent misrepresentation requires that we reverse the award of attorney's fees and remand that award for reconsideration in light of the tenants' success solely on their breach of contract claim.
TAYLOR, J., and FRUSCIANTE, JOHN A., Associate Judge, concur.

*580 ON REHEARING

PER CURIAM.
We grant appellants' motion for rehearing, strike the final paragraph of our previous opinion, and substitute the following:
Our reversal of that portion of the final judgment awarding damages for negligent misrepresentation requires that we reverse the award of prevailing party attorney's fees for reconsideration in light of our opinion.
POLEN, TAYLOR, JJ., and FRUSCIANTE, JOHN A., Associate Judge, concur.